IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                :
HERBERT ALEXANDER
                                :

    v.                          :      Civil Action No. DKC 2007-0479

                                :
THE SPORTS AUTHORITY, INC.,
  et al.                        :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this product liability case is the motion of Defendant TSA Stores, Inc. to dismiss, or in the alternative, for summary judgment.[1] (Paper 7). Because the court will rely on materials outside the pleadings, the motion will be treated as one for summary judgment. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and decision deferred in part. Plaintiff will be permitted to file a surreply on one issue.

## I.  Background

The facts in this case are largely undisputed. On November 28, 2004, Plaintiff Herbert Alexander purchased a Schwinn Tornado M26 bicycle from the Sports Authority store located on Rockville Pike in Rockville, Maryland.

From November 28 until January 1, Plaintiff rode the bicycle approximately six times, apparently without incident. (Paper 15,

---

[1] Defendant TSA Stores, Inc., was incorrectly named The Sports Authority, Inc., in the complaint.

Ex. B, Alexander Aff. ¶ 6).  On January 1, 2005, when Plaintiff applied the brakes to avoid a car, he was thrown over the handlebars of his bicycle. (Paper 2 ¶ 5).  Plaintiff, 77 years old at the time, sustained multiple injuries from the fall.

Plaintiff alleges that his fall and the resulting injuries occurred because his bicycle was outfitted with high-performance, linear-pull brakes.  Plaintiff alleges that these brakes were designed for experienced riders, were not meant for use by the general public, and required special training for their use. Plaintiff sued Defendants TSA Stores, Inc. ("TSA"), Pacific Cycle, Inc., and Dorel Industries, Inc., for negligence and product liability.[2]  Plaintiff alleges that the bicycle's design was defective because it included high-performance brakes on a bicycle intended for general use.  Specifically, Plaintiff alleges in Count I that Defendants were negligent, careless, and reckless because TSA failed to provide proper training in the use of high performance brakes at the point of sale and Pacific Cycle installed brakes designed for experienced riders on a bicycle meant for the general public's use.  In Count II, Plaintiff alleges that Defendants are strictly liable for his injuries because the bicycle was placed in the stream of commerce and sold in a defective and unreasonably dangerous condition.

---

[2]  Dorel Industries, Inc., has been dismissed from the suit (paper 21) and Pacific Cycle has not moved for summary judgment at this time.

At the time of purchase from TSA, Plaintiff executed a bicycle sales/repair ticket that included a release agreement ("release agreement").  As part of the release agreement, Plaintiff signed and dated the following statement: "I have been shown the proper way to operate the shifting, braking and release mechanisms of this bicycle. . . ."  (Paper 7, Ex. A1).  Plaintiff also signed his initials next to each of the following paragraphs:

> I understand and am aware that bicycling is a **HAZARDOUS** activity.  I understand that the sport of bicycling and the use of this bicycle equipment involves a risk of personal injury to any and all parts of my body and that physical injury is a common occurrence of this sport.  I freely and expressly assume and accept any and all risks of injury or death resulting from the use of this equipment.
>
> I agree that I hereby release this bicycle shop, equipment manufacturer, and distributor, from any and all responsibility or liability for physical injuries to myself or others or property damage resulting from the use of this equipment.  Except to the extent that such claim might be based on the sole and exclusive negligence of this bicycle shop, I agree **NOT** to make a claim against or sue this bicycle shop for injuries or damages relating to bicycling and/or the use of this equipment.

(Paper 7, Ex. A1) (emphasis in original).  Finally, Plaintiff initialed and signed the following:

> **THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, WHICH EXTEND BEYOND THE DESCRIPTION OF THE BICYCLE EQUIPMENT LISTED ON THIS FORM.**

3

> I have carefully read this agreement and
> release and fully understand its contents. I
> am aware that this is a release of liability
> and a contract between myself and this shop
> and I sign it of my own free will. This
> agreement shall be effective and binding upon
> the parties hereto.

(Paper 7, Ex. A1) (emphasis in original).

TSA moves to dismiss, or in the alternative, for summary judgment. (Paper 7). TSA argues that it is entitled to judgment on all claims because (1) the release agreement Plaintiff signed expressly releases TSA from liability, (2) TSA had no duty to train Plaintiff, (3) Maryland law provides a statutory defense to sellers in defective design cases such as this, and (4) Plaintiff's disregard for the written warnings is an intervening cause of his injury and provides a defense to strict liability. Plaintiff opposes the motion.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint. The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)). When doing so, the

court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading." *See* Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  Release Agreement

TSA argues that the release agreement signed by Plaintiff at the point of sale was clear, and unambiguously releases it from liability.   In particular, TSA cites the following paragraph, initialed by Plaintiff: "Except to the extent that such claim might be based on the sole and exclusive negligence of this bicycle shop, I agree **NOT** to make a claim against or sue this bicycle shop for injuries or damages relating to bicycling and/or the use of this equipment. . . ." (Paper 7, Ex. A1) (emphasis in original).   TSA states that a plain reading of Plaintiff's complaint illustrates that he has not made a claim based on the sole and exclusive negligence of TSA because he named two other Defendants in the suit and asserted that the manufacturer created the alleged defect in the bicycle.  (Paper 7, at 6-7).   Plaintiff counters that the release agreement is ambiguous because a reasonable person would not interpret the cited provision "to allow a lawsuit against the store if the store was negligent, but to exempt suits against the store if the store along with another entity were negligent." (Paper 15, at 5).

"Maryland courts apply an objective standard when interpreting and construing contracts."   *Coll. of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.*, 132 Md.App. 158, 167 (2000) (citing

*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985)).[3]
The principal goal in the interpretation of contracts is to effect
the intention of the parties.   *Kasten Constr. Co., Inc. v. Rod
Enters., Inc.*, 268 Md. 318, 328 (1973).   When a contract's language
contains clear and unambiguous terms, the court will not engage in
construction, but will look solely to what was written as
conclusive of the parties' intent.   *Gen. Motors*, 303 Md. at 261.

> A court construing an agreement under this
> test must first determine from the language of
> the agreement itself what a reasonable person
> in the position of the parties would have
> meant at the time it was effectuated.   In
> addition, when the language of the contract is
> plain and unambiguous there is no room for
> construction, and a court must presume that
> the parties meant what they expressed.

*Id.*

The release agreement is not ambiguous, but it does not have
the meaning suggested by TSA.   The release agreement does not
categorically bar the entire lawsuit because Plaintiff has named
other defendants.   A plaintiff is always entitled to argue
alternative theories of liability, something that would be
foreclosed by TSA's suggested interpretation.   No other court has
interpreted "except to the extent that such claim might be based on
the sole and exclusive negligence of . . ." to mean what TSA
suggests, that a plaintiff may not sue one entity if another entity

---

[3] The sale occurred in Maryland and the law of Maryland
governs the substantive legal issues in this diversity action.
*Ramos v. S. Md. Elec. Co-op.*, 996 F.2d 52, 54 (4th Cir. 1993).

may also be at fault.   Other courts have interpreted this, or similar provisions, to mean that a defendant's liability is limited only to its own negligence.   For example, a New York state court allowed injured construction workers to recover against both the general contractor and the subcontractor, even though a contract required the subcontractor to "indemnify the general contractor for all liabilities . . . excluding only liability created by the [general contractors's] sole and exclusive negligence".   *Dutton v. Charles Pankow Builders, Ltd., et al.*, 745 N.Y.S.2d 520 (N.Y. App. Div. 2002), *app. denied*, 99 N.Y.2d 511 (2003).   The court required the subcontractor to indemnify the general contractor, but excluded the portion of the joint liability attributable to the general contractor's negligence.   *Id.*   Similarly, the release agreement in this case plainly allows claims that are based on TSA's own negligence, such as Count I.   The release agreement does bar claims that are based on anything other than TSA's own negligence, such as Count II which alleges strict liability.

The next question is whether the release agreement is enforceable as to Count II.   "In Maryland, unambiguous exculpatory clauses are generally held to be valid in the absence of legislation to the contrary."   *Seigneur v. Nat'l Fitness Inst., Inc.*, 132 Md.App. 271, 281 (2000).   The Court of Appeals of Maryland stated:

> It is quite possible for the parties expressly
> to agree in advance that the defendant is

10

> under no obligation of care for the benefit of
> the plaintiff, and shall not be liable for the
> consequences of conduct which would otherwise
> be negligent.   There is in the ordinary case
> no public policy which prevents the parties
> from contracting as they see fit.

*Wolf v. Ford*, 335 Md. 525, 531 (1994) (quoting W. Page Keeton, *et al.*, *Prosser and Keeton on the Law of Torts*, § 68 (5th ed. 1984)). Three exceptions have been identified where the public interest will render an exculpatory clause unenforceable.   They are: (1) when the party protected by the clause intentionally causes harm or engages in acts of reckless, wanton, or gross negligence; (2) when the bargaining power of one party to the contract is so grossly unequal so as to put that party at the mercy of the other's negligence; and (3) when the transaction involves the public interest.   *Wolf*, 335 Md. at 531-32.

First, there is no evidence that TSA intentionally caused harm to Plaintiff or engaged in reckless, wanton, or grossly negligent conduct.   Second, it is true that the release agreement is a contract of adhesion, but that fact alone does not demonstrate that TSA had grossly disparate bargaining power.[4]   "To possess a decisive bargaining advantage over a customer, the service offered must usually be deemed essential in nature." *Seigneur*, 132 Md.App.

---

[4] "A contract of adhesion, it is well settled, is one, usually prepared in printed form, 'drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'"   *Holloman*, 391 Md. at 602 (quoting *Restatement (Second) of Conflict of Laws* §§ 187, cmt. b).

at 283.  In *Seigneur*, the Court of Special Appeals of Maryland held that gym club membership is "a good idea and no doubt contribute[s] to the health of the individual participants and the community at large.  But ultimately, [it is] not essential to the state or its citizens." *Id.* at 284.  By the same token, purchasing a bicycle is not essential.  Thus, the bargaining power of the parties was not "so grossly unequal" as to put Plaintiff at the mercy of TSA's negligence.  Third, and finally, the transaction did not involve the public interest.  The *Wolf* court identified transactions that affect the public interest as those involving:

> the performance of a public service obligation, *e.g.*, public utilities, common carriers, innkeepers, and public warehousemen. It also includes those transactions, not readily susceptible to definition or broad categorization, that are so important to the public good that an exculpatory clause would be "patently offensive," such that "the common sense of the entire community would . . . pronounce it" invalid.

*Wolf*, 335 Md. at 532 (internal quotation omitted).  The sale of a bicycle plainly does not fall into one of these categories of transactions.  Thus, none of the public interest exceptions render this exculpatory clause unenforceable as to Count II.

Plaintiff argues that even if the release agreement would be enforceable otherwise, it is void in this case because it does not identify TSA or The Sports Authority by name, but rather refers to "the bicycle shop."  As support, Plaintiff cites to *Signeur*, 132 Md.App. 271, which cited with approval the determination of the

Court of Appeals of Indiana in *Powell v. American Health Fitness Center of Ft. Wayne, Inc.*, 694 N.E.2d 757 (Ind.Ct.App. 1998). In *Powell*, the court held that the exculpatory clause, signed by the plaintiff when he joined the gym, did not indemnify or release American Health Fitness Center of Fort Wayne ("American Health") from claims, damages, or causes of action, where the injuries were caused by the negligence of American Health.[5] Plaintiff, however, misinterprets the holding in *Powell*. Plaintiff suggests that the holding in *Powell* requires that the party seeking release from liability be named formally in the contract. (Paper 15, at 6).

---

[5] The exculpatory clause at issue in *Powell* is as follows:
17. DAMAGES: By signing this agreement and using the Club's premises, facilities and equipment, Member expressly agrees that the Club will not be liable for any damages arising from personal injuries sustained by Member or his guest(s) in, on, or about the Club, or as a result of using the Club's facilities and equipment. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or their guest(s) in, on, or about the Club premises or as a result of using the Club's facilities and equipment. Member agrees that the Club shall not be liable for any loss or theft of personal property in or about the Club premises and does hereby fully and forever release and discharge the Club and all associated clubs, their owners, employees and agents from any and all claims, demands, damages, rights of action, or causes of action present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of Member's or Member's guest(s) use or intended use of said Club premises, facilities or equipment.

This is incorrect.  In *Powell*, the exculpatory clause was not void because it used the generic "Club" rather than the specific "American Health."  The exculpatory clause was void because it failed to "specifically and explicitly refer to the *negligence* of the party seeking release from liability."  *Id.* at 761 (emphasis added).  Likewise, the exculpatory clause in this case is not void merely because it refers to the "bicycle shop" rather than "The Sports Authority" or "TSA."  Plaintiff cannot credibly claim that the identity of the other party to the contract was unclear at the time he signed the release agreement.

Finally, Plaintiff argues that his signature attesting to the fact that he was shown "the proper way to operate the shifting, braking and release mechanisms of this bicycle" should not be considered because there is no evidence that he, a non-expert bicyclist, knew the proper way to operate the brakes in question. (Paper 15, at 6).  This argument fails because, as stated previously, "a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution."  *Holloman*, 391 Md. at 595.  The release agreement signed by Plaintiff at the point of sale is valid and releases TSA from liability for Count II.

## IV.  Count I - Negligence

Plaintiff alleges in Count I that TSA was negligent because it failed to provide proper training in the use of high-performance

14

brakes at the point of sale.  (Paper 2 ¶ 6).  To be liable for negligence, TSA must have breached a specific duty it owed to Plaintiff.  "[T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another." *Pendleton v. State*,--- A.2d ---, 2007 WL 1097955, at *5 (Md. April 13, 2007) (quoting *W. Va. Cent. & P. Ry. Co. v. Fuller*, 96 Md. 652, 666 (1903)).

Plaintiff has not identified any Maryland law that imposes a duty on bicycle retailers to train their customers in the use of high-performance brakes, or any other type of brakes.  The authority to which Plaintiff cites, 16 C.F.R. § 1512.1 *et seq.* and 15 U.S.C. § 1261(s), respectively set forth bicycle manufacturing regulations and the definition of a "mechanical hazard," as used in the commerce and trade title.  Neither statute imposes a duty to train on bicycle retailers.

Plaintiff asserts that TSA's duty to train arises from retail industry standards.  Plaintiff has offered the expert opinion of James M. Green, an engineer retained by Plaintiff to investigate his accident, to establish that fact.  (Paper 15, Ex. A).  Mr. Green evaluated the bicycle involved in the accident and prepared a report of his findings, engineering conclusions and opinions with regard to the causal factor of the accident.  (Paper 15, Ex. A ¶ 4).  As part of his findings, Mr. Green opined that TSA had a duty to instruct Plaintiff on the proper use of the brakes at the point

of sale and that it is the generally accepted standard in the retail industry to provide instruction at the point of sale. (Paper 15, Ex. A ¶¶ 5-6).  In its reply brief, TSA disputed Mr. Green's qualifications to offer an expert opinion on the accepted industry standards of retailers.  Plaintiff has not had an opportunity to respond to TSA's challenge.

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mr. Green's forensic engineering *vitae* indicates substantial educational and professional experience in the field of engineering, particularly with regard to bicycle safety.  (Paper 15, Ex. A, Green Aff., Attachments).  Therefore, Mr. Green may be qualified to offer an expert opinion on the technical and/or mechanical causes of the accident.  From the evidence on the record, however, it does not appear that Mr. Green is qualified to offer an expert opinion on the standards or customs of the retail industry because he has not indicated any background in that area.  Mr. Green's *vitae* does not indicate that he has any particular

16

knowledge, skill, experience, training, or education with regard to the retail industry, generally, or the bicycle retail industry, in particular. (*Id*.).

The court will defer ruling on Count I and Plaintiff will be invited to file a surreply, within fourteen days of the date of this Order, to establish Mr. Green's qualifications as an expert in the retail industry. Defendants will have an opportunity to respond to any supplemental filing by Plaintiff.

## V.  Count II - Product Liability

Plaintiff alleges a design defect in the inclusion of high-performance, linear-pull brakes on a bicycle that was meant for use by the general public. TSA argues that, even in the absence of the release agreement, it would be entitled to judgment on Count II, the product liability claim, because (a) Maryland's sealed container defense shields it from liability and (b) the numerous written warnings cure any design defect.

### A. Statutory Defense

TSA argues that, as a retailer, it is shielded from the product liability claim by the sealed container defense found in the Maryland Code Ann., Cts & Jud. Proc. § 5-405. This statute provides:

> (b) It shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that:

17

(1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;

(2) The seller had no knowledge of the defect;

(3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;

(4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and

(5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

The sealed container defense "is not limited to products enclosed entirely in a box at the time of sale." *Quirk v. Home Depot U.S.A.*, 2005 WL 3448039, at *1 (D.Md. Dec. 15, 2005). The sealed container defense covers any product that comes in a "box, container, package, wrapping, encasement, or housing of any nature that covers it . . . [and] unpackaged products that the retailer sold 'in an unaltered form.'" *Id.* (citing Md. Code Ann., Cts & Jud. Proc. § 5-405).

The "fundamental purpose of the defense . . . is to limit the liability of retailers and distributors who could not have reasonably discovered defects that originated with manufacturers." *Reed v. Sears, Roebuck & Co.*, 934 F.Supp. 713, 718 n.4 (D.Md. 1996). Plaintiff contends that the bicycle had a design defect because it was outfitted with high-performance, linear-pull brakes,

18

which were not meant for use by the general public.  Plaintiff further contends that TSA had knowledge of this defect, violating the second requirement of the sealed container defense.  The intent of the Maryland legislature in enacting the sealed container defense was "to make the chickens of a poor design come home to roost with the manufacturer, not the retailer." *Reed*, 934 F.Supp. at 718 n.4 (quoting *Liesener v. Weslo, Inc.*, 775 F.Supp. 857 (D.Md. 1991)).  Plaintiff's claim is precisely the sort from which the Maryland legislature sought to insulate retailers when it enacted the sealed container defense.

Plaintiff further argues that the sealed container defense does not apply because TSA did not sell the bicycle in unaltered form, rather it contracted with a company called Top Dog to assemble the bicycle in question.  (Paper 15, at 7).  Plaintiff goes on to argue that he needs time to conduct discovery to determine the details of the relationship between TSA and Top Dog and to determine whether Top Dog assembled the bicycle properly. TSA argues that Plaintiff's admission that Top Dog assembled the bicycle supports its own argument that it sold the bicycle in unaltered form.  If it is true that TSA hired Top Dog to assemble the bicycle, then Top Dog was TSA's agent and TSA would be responsible for Top Dog's actions under general principles of agency law.  No case that has dealt with Maryland's sealed container defense has addressed the issue of whether a retailer who

hires a contractor to assemble the allegedly defective product, but sells it in unaltered form once it is received from the contractor, is entitled to the protection of the sealed container defense. Plaintiff's plea for additional discovery on this point, however, will be denied.   Plaintiff has not alleged that the bicycle was assembled improperly or that the brakes did not function as intended.   In fact, by all accounts, the brakes functioned exactly as they were supposed to function.   Accordingly, factual questions about the bicycle's assembly are immaterial and discovery regarding those questions is unnecessary.

Because this is an open question of law and the court can grant judgment to TSA on Count II without deciding this question, the court will not decide whether TSA is entitled to the sealed container defense under these particular circumstances.

**B.   Strict Liability**

In Count II, Plaintiff claims that TSA is strictly liable for placing the bicycle in the stream of commerce in a defective and unreasonably dangerous condition.   TSA argues that, assuming *arguendo* that the inclusion of high-performance brakes made the bicycle defective, any such defect was cured by the numerous, explicit warnings contained in the owner's manual for the bicycle.

Maryland applies the consumer expectation test in strict liability design defect cases. *Simpson v. Standard Container Co.*, 72 Md.App. 199, 203 (1987).   "The consumer expectation test

20

emanates from § 402A of the *Restatement (Second) of Torts* which, under certain circumstances, makes the seller of a product that is in a 'defective condition unreasonably dangerous' to the consumer liable for the physical harm caused to the consumer by that product." *Halliday v. Sturm, Ruger & Co., Inc.*, 368 Md. 186, 193 (2002). A product is defectively dangerous "if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it with the ordinary knowledge common to the community as to the product's characteristics." *Id.* at 194 (quoting W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts*, § 99, at 698 (5th ed. 1984)). "[P]roof of misuse by a Plaintiff would negate an essential element of Plaintiff's proof that a product was 'unreasonably dangerous.'" *Barnes v. Komori Am. Corp.*, 2005 WL 5368331, at *2 (D.Md. Aug. 16, 2005), *aff'd*, 173 Fed. Appx. 302 (4th Cir. 2006). "If the Court can say as a matter of law that the plaintiff['s] manner of use of the product cut off the chain of proximate causation, the defendant is entitled to summary judgment. Misuse, which includes failure to follow a manufacturer's warnings, bars recovery for a products liability claim." *Kline v. ABCO Eng'g Corp.*, 991 F.Supp. 747, 750 (D.Md. 1997) (quoting *Higgins v. E.I. Dupont de Nemours & Co., Inc.*, 671 F.Supp. 1063, 1066 (D.Md. 1987)) (internal quotation marks and alterations omitted).

The owner's manual that accompanied Plaintiff's bicycle contained numerous warnings regarding the use of the brakes:

> Do not lock up the brakes.  When braking, always apply the rear brake first, then the front.  The front brake is more powerful and if it is not correctly applied, you may lose control and fall.  [p. 14].

> **Do not lock up brakes.  Sudden or excessive application of the front brakes may pitch the rider over the handlebars, causing serious injury or death.  When braking, always apply the rear brake first, then the front.**  [p. 35].

> **WARNING**: Sudden or excessive application of the front brake may pitch the rider over the handlebars, causing serious injury or death. [p. 103].

> ***WARNING****: Some bicycle brakes, such as linear-pull and disc brakes, are extremely powerful. You should take extra care in becoming familiar with these brakes and exercise particular care when using them.  Applying these brakes too hard or too suddenly can lock up a wheel, which could cause you to lose control and fall.  [p. 104].*

(Paper 15, Ex. B, Alexander Aff., Attachment) (emphasis in original).  Plaintiff's own expert determined that the "the causal factor of this accident appears to be the Cyclist applying the front brakes in an emergency situation." (Paper 15, Ex. A, Green Aff., Attachment).

Plaintiff's actions constituted misuse because he failed to adhere to the written warnings contained in the owner's manual.  A misuse is a use that is not reasonably foreseeable.  *See Ellsworth*

*v. Sherne Lingerie, Inc.*, 303 Md. 581, 595 (1985).   It was not reasonably foreseeable to TSA that a bicyclist would apply the front brakes first, violating numerous, explicit, written warnings in the owner's manual.  *See Kline*, 991 F.Supp. at 750 (holding that it was not reasonably foreseeable that user would violate written warnings).   "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."  *Simpson*, 72 Md.App. at 206-07 (quoting *Restatement (Second) of Torts* § 402A cmt. j).   Plaintiff's failure to obey the manufacturer's cautions by applying the front brake first is an intervening cause of injury and relieves TSA of liability from any design defect that may have existed.

**IV.  Conclusion**

For the foregoing reasons, the motion of TSA for summary judgment will be deferred as to Count I and granted as to Count II. Plaintiff will be invited to file a surreply on the question of Mr. Green's qualifications as an expert witness.   A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge