```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                  :
HERBERT ALEXANDER
                                  :

                                  :    Civil Action No. 2007-0479

                                  :
TSA STORES, INC.,
 et al.                           :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this product liability case is the motion by Defendant TSA Stores, Inc. for summary judgment on Count I.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the motion will be denied.

**I.   Background**

The factual background of this case is fully set forth in the Memorandum Opinion issued on June 14, 2007 (paper 26) and will be repeated only briefly.

Plaintiff sued Defendants TSA Stores, Inc. ("TSA"), Pacific Cycle, Inc., and Dorel Industries, Inc., in a two count complaint alleging negligence and product liability.  Plaintiff purchased from TSA a bicycle outfitted with high performance brakes. Plaintiff sustained injuries when he applied the high performance brakes to avoid a car and flipped over the handlebars of his bicycle.  Plaintiff alleged that TSA was liable under Count I for failing to instruct him at the point of sale on the use of high

performance brakes and under Count II for placing a defective product in the stream of commerce. TSA filed a motion to dismiss or in the alternative for summary judgment on March 2, 2007. The court granted TSA's motion for summary judgment on Count II and deferred judgment on Count I, negligence. (Papers 26 & 27).

The court noted that to be liable for negligence Defendant must have breached a specific duty it owed to Plaintiff. Plaintiff attempted to establish the existence of a duty by offering the expert opinion of James M. Green. Defendant objected to Mr. Green's qualifications as an expert and Plaintiff was invited to file a surreply on this narrow question. Defendant was given an opportunity to respond to Plaintiff's surreply.

**II.  Expert Qualification**

**A. Standard of Review**

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Federal Rule of Evidence 702, the district court has a special obligation to ensure that any and all expert testimony is not only relevant, but reliable. *See Kumho Tire Co., Ltd. v.*

2

*Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). To be considered reliable, an expert opinion "must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)(emphasis in original). Indeed, the Supreme Court has made clear that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). The district court enjoys "broad latitude" in determining the reliability and admissibility of expert testimony, and its determination receives considerable deference. *Kumho Tire Co.*, 526 U.S. at 142 (citing *Joiner*, 522 U.S. at 143); *see also Oglesby*, 190 F.3d at 250.

**B. Analysis**

Plaintiff filed a surreply averring that Mr. Green is qualified by reason of his knowledge, skill, experience, training and education to render opinions with regard to the standard of care and customs in the bicycle retail industry. As support for that assertion Plaintiffs offer a second affidavit of Mr. Green. Mr. Green declared that he has worked for over twenty years as a

consultant to the bicycle retailer industry, consulting with Dahon, Raleigh, Sears, Lowes, Pep Boys, Green Machine, Toys R Us, and Liberty Cycles on "standard of care issues" and that he is familiar with the practices of bicycle retailers. (Paper 28, Ex. A ¶ 2). Mr. Green stated that his engineering services have included point of sale advice as well as advice regarding the standard of care throughout all phases of retail operations. (*Id*. ¶ 3). Mr. Green further stated that he regularly reviewed retail industry publications such as "Bicycle Retailer and Industry News" and publications by the National Bicycle Dealers Association and by state Bicycle Dealers Associations. (*Id*. ¶ 4). Mr. Green stated he is familiar with numerous studies in the bicycle industry, such as the Bicycle Use and Hazard Patterns in the United States. (*Id*. ¶ 6). Mr. Green is an active member of the committee of ASTM, previously known as the American Society for Testing and Materials, that writes the standards for the bicycle and retail industry.[1] (*Id*. ¶ 8). Furthermore, Mr. Green has been accepted as an expert and testified as to the standard of care governing the bicycle retail industry in Circuit Court in Palm Beach, Florida, Circuit Court in Kane County, Illinois, Supreme Court in Buffalo, New York, and Superior Court in Manhattan, New York. (*Id*. ¶ 7). He

---

[1] Mr. Green also stated, however, that "there are no 'written' industry standards similar to 16 C.F.R. § 1512.1 *et seq.* governing a retailer's conduct and/or the standard of care required of a retailer in the bicycle industry." (Paper 28, Ex. A, Second Green Decl. ¶ 5).

4

concluded by stating that he has spent a great deal of his professional career looking at procedures in the bicycle manufacturing and retail industry to ensure consistent quality and standards exist at the point of sale. (*Id*. ¶ 8).

TSA argues that the surreply failed to establish Mr. Green's qualifications as an expert. First, TSA noted that Mr. Green has never worked selling bicycles and has not offered any factual support for his claim that he is knowledgeable in the practices of retailers at the point of sale. (Paper 31, at 5). Second, TSA claims Mr. Green has not factually supported his claim that he is familiar with the standard of care for a Maryland retailer in the selling of general use bicycles to consumers. (*Id*.).

Mr. Green is not required to have personal experience selling bicycles to qualify as an expert in the standard of care employed by bicycle retailers at the point of sale. His experience working as a consultant to several large, chain stores for over 20 years is sufficient to establish his knowledge of the bicycle retail industry. Mr. Green specifically stated that he has offered point of sale advice and advice about the standard of care at all phases of retail operations. Second, Mr. Green's testimony is that there is a "generally accepted standard in the retail industry, that the dealer or seller of a general use bicycle has a duty to provide instruction on the operation and use of the bicycle's brakes at the point of sale." (Paper 15, Ex. A ¶ 6). Although information

5

about Maryland retailers in particular would be helpful, it is not necessary.  Information about national standards of care in the bicycle retail industry are still relevant to the issue in this case.  Mr. Green has demonstrated adequately his particularized knowledge and experience in the standard of care and customs in the bicycle retail industry and he will be permitted to offer his expert opinion in this case.  Thus, Plaintiff has offered admissible evidence that TSA had a duty to train him on the use of high-performance brakes at the point of sale.

**III.  New Arguments**

In its response to Plaintiff's surreply, TSA purports to raise new arguments in support of its original motion for summary judgment.  Specifically, TSA argues that Plaintiff assumed the risk of using the bicycle it sold to him when he signed his initials next to the following:

> I understand and am aware that bicycling is a **HAZARDOUS** activity.  I understand that the sport of bicycling and the use of this bicycle equipment involves a risk of personal injury to any and all parts of my body and that physical injury is a common occurrence of this sport.  I freely and expressly assume and accept any and all risks of injury or death resulting from the use of this equipment.

(Paper 7, Ex. A1) (emphasis in original).  TSA also argues that Plaintiff's failure to read and heed the written warnings accompanying the bicycle constituted contributory negligence.

Under Maryland law, "both assumption of the risk and

6

contributory negligence are a complete bar to recovery." *Prudential Sec. Inc. v. E-Net, Inc.*, 140 Md.App. 194, 226 (2001) (citing *Crews v. Hollenbach*, 358 Md. 627, 640 (2000) (assumption of the risk); *Kassama v. Magat*, 136 Md.App. 637, 657 (2001) (contributory negligence)). Those arguments could have been presented in TSA's original motion, but were not. Plaintiff, obviously, has not had an opportunity to respond to the new arguments raised by TSA. Accordingly, they will not be considered at this time.

                                                     _____/s/_____
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge